1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

11  | BRANDON ALEXANDER
12  | FERNANDEZ,

Case No.  1:21-cv-01748-JLT-BAM (PC)

FINDINGS AND RECOMMENDATIONS
TO DISMISS ACTION, WITH PREJUDICE,
FOR FAILURE TO STATE A CLAIM

Plaintiff,

13

14  v.

(ECF No. 12)

15  GAMBOA, *et al.*,

**FOURTEEN (14) DAY DEADLINE**

Defendants.

16

17        Plaintiff Brandon Alexander Fernandez ("Plaintiff") is a state prisoner proceeding *pro se*

18  and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  Plaintiff's first amended

19  complaint is currently before the Court for screening.  (ECF No. 12.)

20  **I.      Screening Requirement and Standard**

21        The Court is required to screen complaints brought by prisoners seeking relief against a

22  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

23  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

24  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

25  relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

26        A complaint must contain "a short and plain statement of the claim showing that the

27  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

28  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1   conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*
2   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as
3   true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,
4   572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

5           To survive screening, Plaintiff's claims must be facially plausible, which requires
6   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable
7   for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*
8   *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully
9   is not sufficient, and mere consistency with liability falls short of satisfying the plausibility
10  standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

11  **II.    Plaintiff's Allegations**

12          Plaintiff is currently housed at California State Prison, Corcoran in Corcoran, California.
13  The events in the first amended complaint are alleged to have occurred while Plaintiff was housed
14  at Avenal State Prison ("Avenal") in Avenal, California and continued after his transfer to the
15  California Substance Abuse Treatment Facility ("SATF") in Corcoran, California.

16          Plaintiff purports to bring suit on behalf of himself and Doe Plaintiffs, who are inmates
17  who may be incapacitated at this time by COVID-19, inmates who cannot legally defend
18  themselves due to current isolation, inmates who have died from COVID-19, any and all inmates
19  who have contracted COVID-19 while in custody, all inmates who are currently at risk of
20  COVID-19, inmates who may be under duress at this time and afraid to participate due to fears of
21  retaliation by defendants, and inmates who Plaintiff cannot physically contact because of the
22  prison lockdown status and physical separation issues.[1]

23          Plaintiff names the following defendants: (1) Gavin Newsom, Governor; (2) Kathleen
24  Allison, Secretary CDCR; (3) Ralph Diaz, Former Secretary CDCR; (4) Martin Gamboa, Warden
25  Avenal State Prison; (5) Theresa Cisneros, Warden SATF Corcoran; and (6) Rosemary Ndoh,
26  Former Warden Avenal State Prison.  All defendants are sued in their official and individual
27  capacities.  Plaintiff alleges that all defendants acted in concert and every defendant in the suit

28  _____
[1] As explained, *infra*, and in the Court's prior screening order, Plaintiff cannot proceed via class claims.

1    personally knew of the risks and individually chose to violate Plaintiff's rights, and he is not

2    bringing a claim of supervisory liability as to each defendant.  Plaintiff alleges facts as follows:

3         On April 21, 2020, Plaintiffs, along with other inmates, filed an emergency administrative

4    602 appeal regarding Defendants' illegal actions in response to the COVID-19 pandemic.  The

5    602 appeal requested immediate release of Plaintiff(s) to reduce the population below 100% of

6    capacity and cease the response of mandatory "8 man cohorting" that CDCR had implemented as

7    a procedure on Plaintiff, against Center of Disease Control ("CDC") recommendations to prevent

8    the spread of COVID-19 in dorms.

9         At the time of the 602 appeal, zero cases of COVID-19 were present at the facility where

10   Plaintiff was housed.  All Defendants in this action acted in concert to bypass the CDC

11   recommendations of a 50% reduction of dorms to "4 man or less cohorts" and instead increased

12   the population density, thus overcrowding the dorms and increasing the fuel to spread, and they

13   knew the risks of doing this.

14        Plaintiff anticipated the level of suffering and damages that would occur from CDCR's

15   actions and inactions and in the 602 demanded financial compensation for said suffering or death

16   should Plaintiffs contract COVID-19 from being placed in the 8-man cohort double bunks.  The

17   upper tiers in buildings previously averaged only 5 inmates per dorm on 5 total bunks per dorm,

18   with many inmates not having a Bunkie.  Avenal increased the population and issued memoranda

19   to the population that they would be doing so.  Plaintiff alleges that this is the immediate

20   deliberate indifference, as they knew of the risks of increasing the population and created an

21   environment that harmed Plaintiff.

22        Defendants then intentionally delayed the emergency 602 appeal until June 3, 2020, at

23   least 40 days through the review process, and returned the appeal "Partially Granted" (See Exhibit

24   A) with the legal response from their superiors at Sacramento and signed by Rosemary Ndoh at

25   Avenal, claiming that no department policy was violated and that CDCR had adequately

26   responded to the pandemic.

27        Sometime in April to May of 2020, Avenal began mass testing inmates on Facility 5 for

28   COVID-19 infections due to the outbreaks on other yards at the facility.  It was fully documented

3

1    that all inmates on Facility 5 (Plaintiff's yard) did not test positive, which is why Plaintiff became

2    concerned of becoming infected due to the negligence taking place by CDCR's handling of the

3    situation by increasing the population density.

4         Within 3 weeks of filing the Emergency Appeal, Avenal went from having zero known

5    cases of COVID-19 to 799 cases of COVID-19, an outbreak that would grow to the 3000 range,

6    and 8 deaths.  At this time, Facility 5 still did not have any cases of COVID-19.

7         On June 4, 2020, Plaintiff responded to the 602 appeal as being dissatisfied with

8    Defendants' response and appealed the final third level review via legal mail.  Plaintiff did not

9    receive a response.

10        As of October 1, 2020, Plaintiff and all of the inmates who signed the class action 602

11   appeal tested positive for COVID-19, and there was over a 99% infection rate at the facility.  It

12   made national headlines.

13        Plaintiff was subsequently transferred to SATF, where he is still experiencing the same 8

14   man cohort conditions and has barely dodged COVID through recent omicron variant mass

15   outbreaks at SATF.  The transfer did not make Plaintiff's position in this case moot.

16        Plaintiff contracted COVID, and is permanently injured, due to overcrowded conditions

17   made possible by Defendants' "8 man cohorting" overcrowding policies.

18        Plaintiff gave adequate warning to all of the Defendants in this action by administrative

19   appeal of the danger he was in and what would be the causes.

20        Plaintiff alleges that overcrowding is the proximate cause of the state and constitutional

21   law violations, and combined with "8 man cohorts" increasing population density within dorms,

22   caused the spread of the virus and made the virus unmanageable within the prison system.  CDCR

23   has also experienced massive staff shortages, further compounding the inability to safely care for

24   the overcrowded inmate population.  If the inmate population was at 50% of its current

25   population, they would have enough staff to manage the yards safely.

26        Plaintiff contends that CDCR intentionally overcrowded the dorms of not only Avenal,

27   but other CDCR dorm facilities as well, knowing that the risks of doing so would accelerate the

28   spread of COVID-19 and would place Plaintiff in the path of harm.  Plaintiff was in fact later

1    harmed by these conditions, that were not part of normal prison hardships, and these "8 man

2    cohorts" were intentionally created and implemented by Defendants, completely outside the

3    recommendations of the CDC, science, doctors, and scientists.  Combined with Plaintiff's right to

4    be free from infectious diseases, Defendants deprived Plaintiff of his constitutional right and

5    ability to defend himself from the COVID-19 virus because he was unable to socially distance

6    from sick inmates.

7            Plaintiff contends that Defendants failed to act responsibly, and each Defendant had the

8    opportunity and the legal authority to release and reduce inmates under emergency legal

9    provisions defined in California Law (Cal. Gov. Code § 8658) to reduce the population either by

10   transfers or a prison release order pursuant to the CDC recommended levels of inmates per

11   dorm/cell/housing configurations, and they intentionally did not do so.  Instead of taking proper

12   action to prevent the spread of disease, the Defendants chose to piecemeal their own method of

13   how they would manage COVID-19 in the institutions.  Instead of focusing on releasing or

14   isolating inmates likely to experience higher COVID-19 related complications, they chose to

15   release "Non-Violent" offenders and delay those releases, which has resulted in mass injury and

16   death.  These "Non-Violent" offenders were statistically a greater risk to public safety than life

17   term inmates, many of whom have aged in prison and have worse health conditions.

18           Each Defendant is and was fully aware of the devastation that would be caused by this

19   highly contagious and aggressive virus.  Defendants were warned by CDC experts, medical

20   professionals, and scientists, and other litigation efforts, of what would happen if Defendants did

21   not take preventative measures to reduce and release the inmate population.  Defendants have

22   consistently lied and claimed they are doing everything in their power to protect inmates, except

23   the one thing they should have done from the start of the global pandemic, which is to reduce the

24   prison population to avoid the exact catastrophe that continues to unfold.  There isn't any viable

25   excuse of ignorance, legal road blocks, jurisdiction issues, or a guise of public safety concern on

26   this subject, as the knowledge of COVID-19 dangers have been the focus of the entire world since

27   the pandemic initiated in our country.

28   ///

5

1    Plaintiff was infected by COVID-19 due to Defendants' actions and inactions, which

2    caused Plaintiff to be placed in "8 man double bunk cohorts" that increased the population density

3    at institutions and increased the spread of disease.  Plaintiff is now highly concerned about being

4    reinfected with a new variant of COVID-19 due to the continued living conditions that caused

5    Plaintiff to be harmed in the first place.  Plaintiff is still suffering from CDCR lockdowns, which

6    are affecting his mental and physical health and subjecting Plaintiff to dangerous living

7    conditions.  Plaintiff was transferred to SATF, where the exact same conditions have happened,

8    resulting in a second outbreak of the omicron variant of COVID-19.  Plaintiff was never tested

9    during the mass outbreak at SATF.  Many inmates have already suffered COVID-19 infection or

10   reinfection, and these plaintiffs deserve priority remedies asked for in this suit.  This should also

11   apply to any inmates who are injured after as well.  Some plaintiffs have not yet contracted

12   COVID-19, and almost all inmates are still in dangerous 8 man cohort living conditions forced by

13   Defendants.

14   Plaintiff alleges that Defendants used COVID-19 as an excuse to shuffle bodies and

15   compact more people per housing unit than was recommended by the CDC.  CDCR staff are a

16   virus vector for bringing the disease into the prison.  Defendants ignored scientific evidence and

17   recommendations by the CDC and chose their own methods to control the virus.  Defendants

18   ordered Plaintiff to double bunk, living in 8 man cohorts per dorm, giving Plaintiff zero chance to

19   social distance from any single person and forced Plaintiff to breathe the same air as

20   contaminated persons.  They were told to make them "4 man or less cohorts" and instead made

21   them "8 man cohorts," increasing population density, and they knew beyond all doubt it would

22   accelerate the spread of the virus.

23   Almost all of CDCR's prisons were not designed with communicable airborne disease

24   prevention in mind.  SATF especially has ventilation issues and mold growing throughout the

25   buildings.  Ventilation may push air adequately into the dorms but inadequately out of the

26   building.  The current design is a super spreader for disease and airflow can easily be shown.

27   Defendants were made aware early on of the risk of poor ventilation.

28   ///

6

1    Defendants delayed in providing N95 masks to inmates and staff multiple times.  Even
2    when N95 masks were provided, many inmates refused to wear them (and instead wore cloth
3    masks) because they were told if they lost the metal nose clamp that they would get a 115 for
4    losing the metal.  The metal is soft and falls off easily.  Many inmates were under duress of
5    reprisals for wearing masks.  Defendants were made aware early of the risks of denying delivery
6    of critical supplies.  Specific to SATF, inmates were previously told if they were caught wearing
7    a N95 mask they would be punished and told they would instead have to sign for the CDCR cloth
8    mask.  Plaintiff was forced to sign for a cloth mask and told he had to wear it and not a N95
9    mask.  Only as of January 22, 2022 did SATF change this and force N95 masks to be worn,
10   almost 2 years after the start of the pandemic.

11   Proper PPE was delayed for staff members and contractors within the prison system.
12   COVID-19 certified cleaning supplies were not implemented properly in the time before the
13   COVID-19 outbreak at Avenal, or some critical ones were delayed.  Housing units are still
14   missing sanitation stations accessible to inmates in their living areas, such as soap and hand
15   sanitizer dispensers that were made available at other institutions.  Sanitation stations are still
16   unavailable at SATF.

17   Defendants have at multiple times suspended visiting, causing phone common area
18   contact to escalate, increasing the likelihood of area contamination.  Defendants have had the
19   technology available to give video visits over inmate tablets and instead chose to use other highly
20   contagious methods of communications.  Combined with overcrowding, it guarantees the
21   transmission of disease.

22   Defendant CDCR Secretary Kathleen Allison claimed that "GTL Tablets" which allow
23   phone calls to be made from them (also email and video visits possible) would be available at
24   every institution during the pandemic for every inmate.  This has not been the case and extensive
25   delays have occurred.  The struggle to maintain relationship ties has been extreme for Plaintiff
26   and these tablets have yet to be installed at multiple prisons.  These tablets allow inmates to not
27   have to share a pay phone as a common area of the institution.  This technology has been
28   available pre-pandemic and especially post-pandemic.

Plaintiff is experiencing abnormal levels of anxiety and stress that absent the conditions of confinement to these "8 man cohorts" would not exist. Overcrowding housing conditions and constant lock downs with little movement and exercise is worse than SHU program where at least yard is guaranteed. Currently violations are happening so bad that inmates are gaining weight because they can't exercise consistently. This leads to stress and anxiety as inmates are being cooped up in overcrowded dorms and housing units.

Avenal and SATF have had non stop staff shortages, which further compounds the COVID-19 crisis. CDCR needs a certain amount of staff to have a safely running facility. They can't meet the objective because they can't keep the facility staffed because of COVID-19 cases. However, if the inmate population were at 50% of capacity at every single institution, they wouldn't need those levels of staff and could even shut down a yard or two (or dedicate those buildings to Quarantine Stays). The lack of staff has created a security issue. There isn't enough staff to safely respond to major COVID-19 spreading crisis when it happens, due to the overpopulation.

CDCR continues to shuffle inmates from spot to spot, prison to prison, and causing more infections by doing so. Defendants intentionally moved non-sick inmates into areas that are infected and sick inmates into areas that are not infected. This is happening because CDCR is overpopulated and doesn't have any room for adequate isolation areas. The shuffling is due to CDCR not having any physical bed space wiggle room due to overcrowding. If all institutions were at 50% of capacity then the facilities would have plenty of room to achieve a realistic COVID-19 (and other communicable disease) managed environment.

SATF houses an inmate population with medical risk factors as well as senior citizens. CDCR is aware that this group of inmates as a heightened risk of serious complications and death rates with COVID-19. It appears that CDCR is attempting to intentionally cause harm and death to inmates of this classification, as well as cause further spread of the virus, by compacting them in overcrowded living areas.

The California Board of Prison is highly reluctant to let go of life term inmates. Defendants know that these inmates are extremely low risk to let go, but can't deal with public

outcry.  They had the chance to let go a majority of all lifers who have a CSRA score of Low to Moderate who had done the majority of their time or all of their time and more.  This is what specifically resulted in deaths, because these inmates' "life crimes" will never change no matter how well they do in prison, their commitment offense is still listed as "violent."  Defendants have legal authority to release this class of inmates and refused.  The lifer population is directly adding to the overpopulated Dorms on Level 2 facilities, and this class of inmates are at greater risk of injury.

Upon detecting the virus within many yards, CDCR did not immediately lock down the entire yard and test every inmate on the yard for detection of the spread of the virus through common areas at the facility (Chow Hall Workers for example).  This can easily be done but isn't their protocol.  Either they cannot afford the test, are lazy, don't have the human resources, or it is incompetence.  Due to the overpopulation of the facilities it is nearly impossible for CDCR to test everyone in the time necessary to effectively contain the virus.  CDCR knows this.  CDCR does not have the physical space needed to manage the virus effectively, as there are too many inmates packed into dorms and the prisons.

As an example, recently at SATF, on January 21, 2022, Defendants at SATF began to move infected inmates into Facility F – Building 1 – A section, which although on paper appears to be segregated from the other pods, shares a common connection to the sally port and officer work area (rotunda).  There is an extreme risk of transmitting this disease back to the rest of the building, as inmates are not given CDC recommended PPE for working around infected people.  CDCR knows what they are doing.  The increased risk of transmitting this disease is more than likely to rapidly spread to everyone at the facility.  On January 22, 2022, all inmates were given N95 masks, only after the infection was already at the facility.  On January 29, 2022, after realizing their mistake of flooding Facility F1 with positive inmates, they then tried to force all inmates in C and D sections to move to sick yard instead of evacuating the sick inmates.

Plaintiff requests the following relief: (1) appointment of counsel; (2) a jury trial; (3) costs of suit or attorneys fees; (4) further damages; (5) a Court order for a 50% population cap to address the issue of overcrowding; (6) priority early release or release of inmates past their

1  MEPD; (7) priority release for Plaintiff; and (8) compensatory damages.

2  **III.    Discussion**

3          Plaintiff's first amended complaint fails to comply with Federal Rule of Civil Procedure 8

4  and fails to state a cognizable claim for relief.  Despite being provided with the relevant pleading

5  and legal standards, Plaintiff has been unable to cure the identified deficiencies.

6          **A.    Appointment of Counsel**

7          As Plaintiff was previously informed, he does not have a constitutional right to appointed

8  counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *rev'd in part on*

9  *other grounds*, 154 F.3d 952, 954 n.1 (9th Cir. 1998), and the court cannot require an attorney to

10  represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1).  *Mallard v. U.S. Dist. Court for the S. Dist.*

11  *of Iowa*, 490 U.S. 296, 298 (1989).  However, in certain exceptional circumstances the court may

12  request the voluntary assistance of counsel pursuant to section 1915(e)(1).  *Rand*, 113 F.3d at

13  1525.

14          Without a reasonable method of securing and compensating counsel, the Court will seek

15  volunteer counsel only in the most serious and exceptional cases.  In determining whether

16  "exceptional circumstances exist, a district court must evaluate both the likelihood of success on

17  the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the

18  complexity of the legal issues involved."  *Id.* (internal quotation marks and citations omitted).

19          The Court has considered Plaintiff's request, but does not find the required exceptional

20  circumstances.  Even if it is assumed that Plaintiff is not well versed in the law and that he has

21  made serious allegations which, if proved, would entitle him to relief, his case is not exceptional.

22  This Court is faced with similar cases filed by prisoners with limited access to a law library

23  almost daily.  These prisoners also must conduct legal research and prosecute claims without the

24  assistance of counsel.

25          Furthermore, at this stage in the proceedings, the Court cannot make a determination that

26  Plaintiff is likely to succeed on the merits.  As discussed below, Plaintiff's first amended

27  complaint fails to state a cognizable claim for relief.  Finally, based on a review of the record in

28  this case, the Court does not find that Plaintiff cannot adequately articulate his purported claims.

1

**B.      Plaintiff Cannot Represent Other Inmates**

2          Insofar as Plaintiff is attempting to assert claims on behalf of other inmates, he may not do

3    so.  Plaintiff may only represent his own legal interests; he may not represent the legal interests of

4    other inmates or other individuals.  "A litigant appearing in propria persona has no authority to

5    represent anyone other than himself" in a civil rights action.  *Russell v. United States*, 308 F.2d

6    78, 79 (9th Cir. 1962); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 (3rd Cir. 1981) ("[A]n inmate

7    does not have standing to sue on behalf of his fellow prisoners.  Rather, the prisoner must allege a

8    personal loss and seek to vindicate a deprivation of his own constitutional rights."  (Citations

9    omitted.)).  "Although a non-attorney may appear *in propria persona* in his own behalf, that

10   privilege is personal to him.  He has no authority to appear as an attorney for others than

11   himself."  *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987) (citations omitted).

12         For these reasons, the Court construes this action as an individual civil rights suit brought

13   by Plaintiff alone.

14

**C.      Federal Rule of Civil Procedure 8**

15         Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim

16   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Detailed factual allegations

17   are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

18   conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must

19   set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

20   its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations

21   are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*,

22   572 F.3d at 969.

23         Plaintiff's complaint is neither short nor a plain statement of his claims.  Most of

24   Plaintiff's allegations are vague and conclusory statements that do not contain enough factual

25   details to permit the Court to draw the reasonable inference that any named Defendant is liable

26   for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  Plaintiff may not simply recite the elements

27   of various causes of action without supporting factual allegations, or state in a conclusory fashion

28   that Plaintiff's rights were violated.  Plaintiff fails to include factual allegations identifying what

happened, which Defendant was involved, and how the actions or inactions of each Defendant violated Plaintiff's rights.

### D.    Linkage

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint again lumps all defendants into all of the allegations. While Plaintiff attempts to allege that each and every Defendant knew certain information or acted intentionally with respect to the allegations in the first amended complaint, these conclusory allegations are insufficient to link any named Defendant to any actions or omissions that may have violated Plaintiff's rights.

### E.    Federal Rules of Civil Procedure 18 and 20

Plaintiff raises new claims that allegedly occurred after his transfer from Avenal to SATF, and adds Theresa Cisneros, Warden of SATF as a named defendant.

Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement

1   refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are

2   properly joined under Rule 20(a) will the Court review the other claims to determine if they may

3   be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

4         Plaintiff may not raise different claims against different defendants from different

5   institutions in a single action.  Even if all of Plaintiff's allegations are based on the same type of

6   constitutional violation (i.e. deliberate indifference to conditions of confinement), this does not

7   necessarily make the claims related for purposes of Rule 18(a).  Claims are related where they are

8   based on the same precipitating event, or a series of related events caused by the same

9   precipitating event.  Although Plaintiff alleges that Defendants all acted in concert, his allegations

10   span a period of time where he was housed at two different institutions, under the purview of at

11   least two different Wardens.  Plaintiff has provided only conclusory allegations that the

12   conditions he faced at each institution were a result of a coordinated or related effort by some or

13   all of the defendants.

14       **F.**    **Supervisory Liability**

15         To the extent Plaintiff seeks to hold any Defendant liable based solely upon their

16   supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for

17   the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556

18   U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v.*

19   *City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th

20   Cir. 2002).  "A supervisor may be liable only if (1) he or she is personally involved in the

21   constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

22   wrongful conduct and the constitutional violation."  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

23   Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. &*

24   *Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16

25   (9th Cir. 2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt

26   personal participation in the offensive act if supervisory officials implement a policy so deficient

27   that the policy itself is a repudiation of constitutional rights and is the moving force of a

28   constitutional violation."  *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646

1    (9th Cir. 1989)) (internal quotation marks omitted).

2          Though Plaintiff states that he is not attempting to impose supervisory liability on any

3    defendant, it remains unclear what conduct Plaintiff alleges that any Defendant engaged in that

4    violated his constitutional rights.  Plaintiff has failed to allege direct participation in the alleged

5    violations.  Plaintiff primarily complains of overcrowding in dorms, but also alleges failings in

6    masking, social distancing, prison movement, COVID-19 testing, and other deficiencies.  Plaintiff

7    has failed to allege the causal link between any defendant and the claimed constitutional violation

8    which must be specifically alleged.  Plaintiff does not make a sufficient showing of any personal

9    participation, direction, or knowledge on any defendant's part regarding any other prison

10   officials' actions.  Plaintiff has again failed to allege that these defendants personally participated

11   in any alleged deprivations.

12         In addition, it appears the primary "policy" Plaintiff complains of relates to overcrowding

13   due to CDCR's failure to provide early release for sufficient numbers of inmates, including

14   Plaintiff.  However, as explained below, Plaintiff does not have a constitutional right to early

15   release.  Plaintiff has failed to allege facts demonstrating that any policy is itself a repudiation of

16   Plaintiff's constitutional rights.  Plaintiff has not sufficiently pled a cognizable claim of

17   supervisory liability based on a constitutionally deficient policy.

18         **G.      Habeas Corpus – Early Release**

19         Plaintiff seeks, among other relief, his early release.

20         To the extent that Plaintiff is attempting to challenge the validity of his conviction and his

21   incarceration, the exclusive method for asserting that challenge is by filing a petition for writ of

22   habeas corpus.  It has long been established that state prisoners cannot challenge the fact or

23   duration of their confinement in a section 1983 action, and that their sole remedy lies in habeas

24   corpus relief.  *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) ("[A] prisoner in state custody cannot

25   use a § 1983 action to challenge the fact or duration of his confinement. He must seek federal

26   habeas corpus relief (or appropriate state relief) instead.").  The Supreme Court has never held

27   there is a constitutional right to early release from a term of imprisonment.  *See Heck v.*

28   *Humphrey*, 512 U.S. 477 (1994) (in order to state a claim for damages for an allegedly

                                                      14

1  unconstitutional conviction or term of imprisonment, or for other harm caused by actions whose

2  unlawfulness would render a conviction or sentence invalid, a plaintiff asserting a violation of 42

3  U.S.C. § 1983 must prove that the conviction or sentence has been reversed or declared invalid.);

4  *see Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the

5  very fact or duration of his physical imprisonment, and the relief he seeks is a determination that

6  he is entitled to immediate release or a speedier release from that imprisonment, his sole federal

7  remedy is a writ of habeas corpus.").

8      **H.      Eighth Amendment – Deliberate Indifference to Conditions of Confinement**

9      Plaintiff is attempting to bring a conditions of confinement claim regarding the spread of

10  COVID-19 due to overcrowded conditions and movement of inmates.  Plaintiff does not allege

11  that he is challenging any medical care provided.[2]

12      Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.

13  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045

14  (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d

15  1521, 1531 (9th Cir. 1993) (en banc).  Prison officials must, however, provide prisoners with

16  "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*,

17  801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515

18  U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*,

19  682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

20      Two requirements must be met to show an Eighth Amendment violation.  *Farmer*, 511

21  U.S. at 834.  "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal

22  quotation marks and citation omitted).  Second, "prison officials must have a sufficiently culpable

23  state of mind," which for conditions of confinement claims, "is one of deliberate indifference."

24  *Id.* (internal quotation marks and citation omitted).  Prison officials act with deliberate

---

26  [2] Plaintiff fails to allege facts about his medical care which demonstrate deliberate indifference.  Deliberate
indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and
27  (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).  The requisite state
of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  *Snow v. McDaniel*, 681
28  F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th
Cir. 2014).

1   indifference when they know of and disregard an excessive risk to inmate health or safety.  *Id.* at

2   837.  The circumstances, nature, and duration of the deprivations are critical in determining

3   whether the conditions complained of are grave enough to form the basis of a viable Eighth

4   Amendment claim.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006).  Mere negligence on the

5   part of a prison official is not sufficient to establish liability, but rather, the official's conduct

6   must have been wanton.  *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.

7   1998).

8           Extreme deprivations are required to make out a conditions of confinement claim, and

9   only those deprivations denying the minimal civilized measure of life's necessities are sufficiently

10  grave to form the basis of an Eighth Amendment violation.  *Farmer*, 511 U.S. at 834; *Hudson v.*

11  *McMillian*, 503 U.S. 1, 9 (1992).  The circumstances, nature, and duration of the deprivations are

12  critical in determining whether the conditions complained of are grave enough to form the basis

13  of a viable Eighth Amendment claim.  *Johnson*, 217 F.3d at 731.  Second, the prison official must

14  "know[ ] of and disregard[ ] an excessive risk to inmate health or safety. . . ."  *Farmer*, 511 U.S.

15  at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying

16  humane conditions of confinement only if he knows that inmates face a substantial risk of harm

17  and disregards that risk by failing to take reasonable measures to abate it.  *Id.* at 837–45.

18          COVID-19 poses a substantial risk of serious harm.  *See Plata v. Newsom*, 445 F. Supp.

19  3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial

20  risk of serious harm" to prisoners.).  However, in order to state a cognizable Eighth Amendment

21  claim, Plaintiff must provide more than generalized allegations that the "medical staff" and

22  "correctional officers" have not done enough regarding overcrowding or prison movement or

23  housing assignment to control the spread.  *See Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020

24  WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-CV-1755 DB

25  P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for

26  failure to adequately control the spread of COVID-19 in the prison); *Benitez v. Sierra*

27  *Conservation Ctr., Warden*, No. 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal.

28  Sept. 8, 2021), report and recommendation adopted, No. 1:21-CV-00370 NONE BAM (PC), 2021

16

WL 4593841 (E.D. Cal. Oct. 6, 2021) (Failed to state a claim on allegations that overcrowding/lack of distance between inmates has exacerbated the conditions leading to transmission of COVID.  Plaintiff alleges that there is no way to socially distance, among other conditions.); *Sanford v. Eaton*, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 1308193, at *8 (E.D. Cal. May 2, 2022), report and recommendation adopted in full, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 2181782 (E.D. Cal. June 16, 2022) (in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and any other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread).

The Court notes that overcrowding, by itself, is not a constitutional violation.  *Doty v. County of Lassen*, 37 F.3d 540, 545 n.1 (9th Cir. 1994); *Hoptowit v. Ray*, 682 F.2d at 1248–49 (noting that overcrowding itself not Eighth Amendment violation but can lead to specific effects that might violate Constitution), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); *see Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989) (allegations of prison overcrowding alone are insufficient to state a claim under the Eighth Amendment.); *see also Rhodes v. Chapman*, 452 U.S. at 348–49 (double-celling of inmates by itself does not inflict unnecessary or wanton pain or constitute grossly disproportionate punishment in violation of Eighth Amendment).  An overcrowding claim is cognizable only if the plaintiff alleges that crowding has caused an increase in violence, has reduced the provision of other constitutionally required services, or has reached a level rendering the institution no longer fit for human habitation.  *See Balla*, 869 F.2d at 471; *see, e.g.*, *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (as amended) (reversing district court's dismissal of claim that overcrowding caused increased stress, tension, and communicable disease among inmate population); *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984) (affirming that Eighth Amendment violation may occur as result of overcrowded prison conditions causing increased violence, tension, and psychiatric problems).

Plaintiff alleges that overcrowding has exacerbated the conditions leading to transmission of COVID.  Plaintiff alleges that there is no way to socially distance, among other problems.  The

1    Court recognizes that "[p]risons present unique concerns regarding the spread of this virus; by

2    their very nature, prisons are confined spaces unsuited for 'social distancing.'"  *Evdokimow v.*

3    *Doll*, No. 4:21-CV-00261, 2021 WL 767554, at *6 (M.D. Pa. Feb. 26, 2021).  Nevertheless, CDC

4    guidelines specifically contemplate that individuals will be confined within prisons during the

5    duration of this pandemic.  *See* Guidance for Correctional & Detention Facilities, Centers for

6    Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-

7    ncov/community/correction-detention/guidance-correctional-detention.html (updated May 3,

8    2022; last visited July 21, 2022).

9         The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living

10   conditions, which he alleges were overcrowded, among other issues, are sufficient to satisfy the

11   objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of

12   serious harm."  The pertinent question in determining whether Plaintiff states a claim is whether

13   defendants' actions demonstrated deliberate indifference to that risk of harm.  The key inquiry is

14   not whether the defendants perfectly responded, complied with every CDC guideline, or whether

15   their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded

16   reasonably to the risk."  *See Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis.

17   Jan. 5, 2021); *accord Benitez, v. Sierra Conservation Center*,  1:21-CV-00370 BAM (PC), 2021

18   WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (same); *Sanford v. Eaton*, No. 1:20-cv-00792-JLT-

19   BAM (PC), 2022 WL 1308193, at *8 (E.D. Cal. May 2, 2022), report and recommendation

20   adopted in full, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 2181782 (E.D. Cal. June 16, 2022)

21   (same).

22        Plaintiff alleges that many measures were implemented in order to protect inmates from

23   the risks of contracting COVID-19, including quarantine isolation designations, testing, housing

24   movement, and the distribution of personal protective equipment.  Plaintiff primarily challenges

25   the housing assignments and the decision not to reduce the inmate population to 50% capacity.

26   The actions of Defendants, to the extent Plaintiff is alleging that each and every Defendant was

27   involved in this decision, may not have been effective or a "perfect response," but Plaintiff does

28   not adequately allege that they were deliberately indifferent to the spread of the disease.  The

1   numerous efforts undertaken demonstrate that Defendants were engaged in active conduct to

2   manage the spread of the virus.  Even if the response at Avenal or SATF has been inadequate, "it

3   has not disregarded a known risk or failed to take any steps to address the risk."  *Wilson*, 961 F.3d

4   at 843 (6th Cir. 2020); *Sanford v. Eaton*, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 1308193,

5   at *8 (E.D. Cal. May 2, 2022), report and recommendation adopted in full, No. 1:20-cv-00792-

6   JLT-BAM (PC), 2022 WL 2181782 (E.D. Cal. June 16, 2022) (failure to state a claim where

7   defendants were trying "alternatives" to manage the situation.); *Benitez, v. Sierra Conservation*

8   *Center*, 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (same).

9          Moreover, Plaintiff fails to attribute any specific conduct to these defendants, other than

10   that they were supervisors.  Plaintiff's conclusory allegations that they "knew or should have

11   known" of failure to mask and lack of social distancing are insufficient.  As explained, *supra*,

12   supervisor liability is insufficient to state a cognizable claim against these defendants.  The Court

13   is not discounting Plaintiff's concerns about contracting COVID-19.  His concerns are valid and

14   significant.  However, the allegations in the complaint do not suggest that Defendants disregarded

15   the risk Plaintiff faced.  Accordingly, he fails to state a claim against them.

16          **I.       Injunctive Relief**

17          Plaintiff requests that the Court order a population cap of 50% of capacity at every yard

18   and institution at which Plaintiff (and other similarly situated inmates) is housed within CDCR,

19   early release for certain categories of inmates, and Plaintiff's priority release.

20          Insofar as Plaintiff seeks injunctive relief against officials at Avenal, any such request is

21   now moot because Plaintiff is no longer housed at that facility.  *See Andrews v. Cervantes*, 493

22   F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become

23   moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam)

24   (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner

25   has been moved and "he has demonstrated no reasonable expectation of returning to [the

26   prison]")).

27          Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of

28   the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief

1  [sought] is narrowly drawn, extends no further than necessary to correct the violation of the

2  Federal right, and is the least intrusive means necessary to correct the violation of the Federal

3  right."  In cases brought by prisoners involving conditions of confinement, any injunction "must

4  be narrowly drawn, extend no further than necessary to correct the harm the court finds requires

5  preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C.

6  § 3626(a)(2).  Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction

7  that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious'

8  about issuing a preliminary injunction and should not grant such relief unless the facts and law

9  clearly favor the plaintiff."  *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434,

10  1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th

11  Cir. 1984).

12       The injunctive relief sought in this action is not narrowly drawn, and appears to extend

13  much further than necessary to correct the harm identified, particularly as it applies to institutions

14  where Plaintiff is not housed and to inmates who are not parties to this action.

15  **IV.    Conclusion and Recommendation**

16       For the reasons discussed, the Court finds that Plaintiff has failed to state a cognizable

17  claim for relief.  Despite being provided with the relevant legal standards, Plaintiff has been

18  unable to cure the deficiencies in his complaint.  Further leave to amend is not warranted.  *Lopez*

19  *v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

20       Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for failure

21  to state a cognizable claim upon which relief may be granted.

22       These Findings and Recommendation will be submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

24  **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

25  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

26  Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

27  ///

28  ///

1   specified time may result in the waiver of the "right to challenge the magistrate's factual

2   findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

3   *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5   IT IS SO ORDERED.

6       Dated:   **July 22, 2022**                    /s/ *Barbara A. McAuliffe*

7                                               UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28